| | |
|---|---|
| **FACTORY MUTUAL INSURANCE COMPANY, as subrogee of the City of Chicago,** } } } } | |
| **Plaintiff,** } } | |
| **v.** } } | **No. 05 C 4430** |
| **CICA-TEC TERMINAL EQUIPMENT CORPORATION, an Illinois corporation, and TCTJB V, INC., d/b/a AFFILIATED BUILDING SERVICES, INC., a foreign corporation,** } } } } } } | **Judge Nan R. Nolan** |
| **Defendants.** } | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Factory Mutual Insurance Company ("FMIC"), as subrogee of the City of Chicago, filed suit against Defendants CICA Terminal Equipment Corporation ("CICA TEC") and TCTJB V, Inc., d/b/a Affiliated Building Services, Inc. ("ABS"), seeking to recover for losses sustained in a fire at the International Terminal of Chicago's O'Hare Airport. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). ABS now moves to dismiss two of the three claims asserted against it for failure to state a claim. For the reasons set forth here, the motion is denied.

## BACKGROUND

FMIC, a Rhode Island corporation with its principal place of business in Johnston, Rhode Island, provides commercial and industrial property insurance and a variety of risk management services. (Cmplt. ¶ 2; http://www.hoovers.com/fm-global/–ID__106386–/free-co-factsheet.xhtml.) Defendant CICA TEC, an Illinois corporation with its principal place of business in Chicago, Illinois, operates and maintains airline equipment and systems. (Id. ¶ 3; Ex. A to Pl. Resp., at FM 282.) Defendant ABS is a Pennsylvania corporation with its principal place of business in Pittsburgh,

Pennsylvania, and provides "professional and technical services regarding the operation and maintenance of . . . equipment and services associated with the operations of an air passenger terminal facility." (Id. ¶ 4; Ex. B to Pl. Resp., at FM 0189.)

## A.  The Insurance Agreements

The City of Chicago, a municipal corporation, owns and operates O'Hare International Airport. (Id. ¶¶ 6, 7.) Sometime prior to August 2001, FMIC issued an insurance policy to the City covering, among other things, damage or loss caused by fire at O'Hare's International Terminal. (Id. ¶ 8.) On January 1, 1990, the City entered into a contract with CICA TEC to operate and maintain certain equipment at the airport, including the baggage handling system at the International Terminal (the "International baggage system"). (Id. ¶ 14.) On October 1, 1996, CICA TEC entered into a Maintenance and Operations Service Agreement with ABS (the "Service Agreement"), providing that ABS would be responsible for the operation, inspection, and maintenance of the International baggage system. (Id. ¶ 15.)

## B.  The Insurance Claims

On August 3, 2001, a fire broke out in one of the baggage conveyor systems at the International Terminal, causing smoke, heat, and fire damage to the conveyor system and to various other portions of the Terminal. (Id. ¶ 17.) The City sought indemnification and reimbursement from FMIC for the damage, and FMIC paid the City pursuant to the terms of its insurance policy. (Id. ¶¶ 10, 11.) In exchange, the City subrogated to FMIC any claims it may have against any individual or entity that may be responsible for causing the fire and the resulting damage. (Id. ¶ 12.)

## C.  The Lawsuit

On August 2, 2005, FMIC filed this diversity suit alleging that CICA TEC and ABS are liable for the fire damage at O'Hare's International Terminal. FMIC charges both companies with

2

negligence and breach of contract, and seeks indemnification for the expenses it incurred under the insurance policy. CICA TEC has answered the Complaint in full. ABS has answered the negligence and breach of contract counts (Count II and IV), but now seeks dismissal of not only the indemnification count (Count VI) but also the breach of contract count that was previously answered. FMIC makes no mention of this seeming inconsistency.

## DISCUSSION

### A. Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all factual allegations in the plaintiff's complaint and draws all reasonable inferences in its favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002).

### B. Analysis

ABS argues that FMIC cannot state a claim for breach of contract or indemnification under Illinois law[1] because the City is neither in privity of contract with ABS nor a third-party beneficiary of the Service Agreement. It is undisputed that the City was not a signatory to the contract between CICA TEC and ABS. Thus, to state a claim for breach of, or indemnification under, that Service Agreement, FMIC must allege that the agreement was made for the City's direct benefit. As Illinois courts explain, "[a] third party may only sue for breach of contract . . . if the contract was entered into for the party's direct benefit; if the third-party's benefit is merely incidental, he has no right of recovery on the contract." *Yakubinis v. Yamaha Motor Corp., U.S.A.*, 365 Ill. App. 3d 128,

---

[1]     The parties agree that this case is governed by Illinois law.

3

140, 847 N.E.2d 552, 563 (1st Dist. 2006). *See also Federal Ins. Co. ex rel. Singer v. ADT Security Sys., Inc.*, 222 F.R.D. 578, 581 (N.D. Ill. 2004) ("For a third party to have a right to sue, the contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear.") (internal quotations omitted). In determining whether a third party is a direct beneficiary of a contract, courts look to "the intention of the parties, which must be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Id.*, 847 N.E.2d at 563 (internal quotations omitted).

ABS argues that the Service Agreement is not intended to benefit the City in any way; rather, "[t]he only beneficiary to the contract is CICA TEC." (Pl. Mot. ¶ 14.) In support of this assertion, ABS emphasizes that the Agreement expressly states that the City is not an intended party to the contract:

> Neither CICA TEC nor the Executive Director is a general contractor, and unless expressly provided for in this Agreement, does not have the obligations of a general contractor. CICA TEC will execute all contracts with Contractor. Neither the Executive Director nor the City are, or are intended to be, parties to such contracts. CICA TEC will have no authority to bind the Executive Director or the City in any way with Contractor, its Subcontractors or any other third parties.

(Service Agreement, Ex. B to Pl. Resp., Section 3.02, at 5.) According to ABS, "[t]he only basis upon which the City would have grounds for maintaining its breach of contract claim . . . would be if there was an express provision in the CICA TEC/ABS contract that provided third-party beneficiary status to the City of Chicago. No such express provision exists in the Agreement." (Pl. Mot. ¶¶ 9, 12 (citing *Ball Corp. v. Bohlin Bldg. Corp.*, 187 Ill. App. 3d 175, 177, 543 N.E.2d 106, 107 (1st Dist. 1989)) ("A third party is a direct rather than an incidental beneficiary when the contracting parties have manifested in their contract an intention to confer a benefit upon the third party.")

FMIC disagrees, arguing that CICA TEC and ABS manifested an intent to benefit the City by specifically mentioning it in the Service Agreement. In support of this theory, FMIC directs the court to *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 78 Ill. 2d 381, 400

4

N.E.2d 918 (1980), in which an architect entered into a contract with the Illinois Building Authority ("IBA") for services related to the construction of a correctional center in Vienna, Illinois. *Id.* at 382-83, 400 N.E.2d at 918. The State of Illinois filed suit against the architect alleging breach of contract, and a question arose as to whether the State was a proper party plaintiff. *Id.* at 383, 400 N.E.2d at 918. The Illinois Supreme Court held that the State could sue under the contract because the agreement "convincingly displays the intent of the parties to make the State a direct beneficiary." *Id.* at 385, 400 N.E.2d at 920. The court noted that the preamble to the contract explained that the State intended to construct a penitentiary; one section of the contract required the architect to "consult with" the State "to ascertain the requirements of [the] Project"; and another section provided that the architect "hereby indemnifies and holds harmless" the State. *Id.* at 386, 400 N.E.2d at 920. According to the court, "[c]onstruction of the prison would directly benefit the State, . . . not the parties." Thus, the State could pursue its breach of contract claim. *Id.* at 386-87, 400 N.E.2d at 920.

FMIC notes that, like the contract in *Resnik*, the Service Agreement contains numerous sections that affirmatively mention the City. For example, ABS is expressly required to indemnify the City:

> Contractor [ABS] covenants and agrees to defend, indemnify, keep, save and hold harmless fully CICA TEC, its Executive Director, AMSI, the ITAPs, the City, and each of their respective officials, agents and employees, against any and all claims, causes of action, suits, judgments, losses, obligations, costs and expenses, including legal fees and expenses arising out of or in connection with Contractor's use of the CICA TEC Equipment or the performance of Services and not arising from the negligent act or omission of CICA TEC, its Executive Director, AMSI, the ITAPs, City, and each of their respective agents, officials, and employees.

(Service Agreement, Ex. B to Pl. Resp., Section 4.01, at 14.) The indemnification further requires that the City, its officials, employees, and agents "be named as additional insureds" on ABS insurance policies. (*Id.* Section 4.02, at 15.) Another section of the Service Agreement requires that ABS's "books and accounts in connection with the Services will be open to inspection by the

5

Executive Director or other authorized representative of CICA TEC and City upon reasonable notice given by CICA TEC to Contractor." (Id. Section 3.09, at 13.)

In addition to these provisions, the Service Agreement includes several definitions relating to various City departments and personnel. For example, "DOA" is defined as the City's Department of Aviation; "Commissioner of Aviation" is defined as "the chief executive of the Department of Aviation for the City . . ."; "Comptroller" is defined as "the chief executive of the Department of Finance for the City . . ."; and "Purchasing Agent" is defined as "the chief executive of the Department of Purchases, Contracts and Supplies for the City . . ." (Id. at 2-4.) The opening Recitals of the Service Agreement also mention the City:

> WHEREAS, the City of Chicago ("City"), will plan, design, procure, construct, start up and relocate certain operations into a new permanent International Facility at Chicago O'Hare International Airport, ("Project"); and

> WHEREAS, City and CICA TEC have entered into a certain agreement dated as of January 1, 1990 . . ., as may be amended or supplemented from time to time, pursuant to which CICA TEC will manage, coordinate and administer the CICA TEC Equipment as defined hereinafter, to be incorporated in the Project . . .

(Id. at 1.) As in Resnik, FMIC argues, it is clear that the services performed under the Service Agreement would directly benefit the City, which owns and operates O'Hare's International Terminal.

The court agrees that FMIC has stated breach of contract and indemnification claims against ABS sufficient to withstand a motion to dismiss. Contrary to ABS's suggestion, the mere fact that the Service Agreement states that the City is not intended as a party to the contract does not preclude a finding that the City is nonetheless a direct beneficiary of that agreement. See Tradewinds Aviation, Inc. v. Jet Support Servs., Inc., No. 04 C 1406, 2004 WL 2533728, at *2 (N.D. Ill. Sept. 28, 2004) ("[A] third-party beneficiary does have standing to sue on a contract, although not a party to the contract, if the contracting parties intended the third party to benefit from the contract.") Nor is it necessary for the parties to have affirmatively stated that the City was an

6

intended beneficiary. The City is expressly named in the Service Agreement, and the circumstances surrounding the agreement's execution may show that the City – which owns and operates O'Hare Airport – was an intended third-party beneficiary. (Cmplt. ¶¶ 7, 33.) *See Paukovitz v. Imperial Homes, Inc.*, 271 Ill. App. 3d 1037, 1039, 649 N.E.2d 473, 475-76 (3d Dist. 1995) (reversing dismissal of plaintiff's third-party breach of contract claim where the plaintiff's name appeared on the contract and the parties to the contract negotiated with knowledge that the plaintiff would benefit from the agreement).

## CONCLUSION

For the reasons stated above, ABS's Motion to Dismiss Counts IV and VI of FMIC's Complaint [Doc. 10] is denied.

Dated: December 20, 2006

ENTER:

Nan R. Nolan

NAN R. NOLAN
United States Magistrate Judge

7